**UNTIED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

DAVID W. CAMERON, and
LYNDA A. CAMERON,

            Plaintiffs,

v.

SEAN MAHAR, Interim Commissioner of The New York State Department Of Environmental Conservation,
and STEVEN MILLER,

            Defendants.

**COMPLAINT**

Civil Action No.:

---

Plaintiffs, David W. Cameron and Lynda A. Cameron ("Plaintiffs"), by their attorneys Woods Oviatt Gilman LLP, for their complaint against the Defendants, Sean Mahar, in his individual capacity and in his capacity as Commissioner of the New York State Department of Environmental Conservation ("the Commissioner") and Steven Miller, ("Mr. Miller"), in his individual capacity and in his capacity as a representative of the New York State Department of Environmental Conservation, allege as follows:

**PRELIMINARY STATEMENT**

1. The Plaintiffs' home is located on the west shore of Seneca Lake in the Town of Benton, in Yates County, New York. This action is being brought to challenge the actions of the Interim Commissioner of the New York State Department of Environmental Conservation ("NYSDEC") and one of the NYSDEC's biologists in ordering the removal of a land bridge over a pond entirely surrounded by land belonging to private landowners bordering on Seneca Lake ("the Pond"). According to the NYSDEC, if the Plaintiffs fail to remove this land bridge, which

was placed across the Pond so that the Plaintiffs could safely access their shoreline, they could be fined or even imprisoned.

2. The Pond which the causeway traverses in not connected to Seneca Lake in any way and it is neither *contiguous* nor *adjacent* to Seneca Lake, a navigable water of the United States, as those terms have been defined under the Clean Water Act (CWA). Even though Seneca Lake is a navigable water of the United States and is subject to the regulatory power of the Environmental Protection Agency ("EPA") and the Army Corps of Engineers ("the Corps"), those agencies have no such authority over the land-locked, privately-owned, Pond and, as a result, the Defendants' attempt to assert regulatory power over the Pond is without statutory support.

3. With the United States Supreme Court's decision in *Sackett v. EPA,* 598 U.S. 651 (2023), the Court finally put to rest a decades-long debate over the standard for determining whether a wetland is subject to the government's regulatory power under the CWA and its state counterparts. In its ruling, the Court held that: "the CWA extends to only those wetlands with a continuous surface connection to bodies that are waters of the United States in their own right*, so that they are indistinguishable from those waters*" (emphasis added). In attempting to assert regulatory control over the Pond, the NYSDEC is necessarily acting as if the *Sackett* standard was never established by the Supreme Court. It does so because, under that standard, no credible argument can be made that the Pond is "a wetland" subject to the CWA or its New York State counterpart, as the Pond has no continuous surface connection to Seneca Lake and is clearly distinguishable from its waters.

4. The Defendants' actions in demanding the removal of the land bridge are unwarranted, serve no legitimate public purpose, are illegal and *ultra vires*. The imponderable standard used by the Defendants to subject the Pond to their regulatory authority is identical to the

"significant nexus" test which the Supreme Court found to be "hopelessly indeterminate" and so vague as to violate the due process clauses of the Fifth and Fourteenth Amendments. If the Defendants succeed in seeking to compel the Plaintiffs to suffer a physical invasion of their property, it will constitute a taking in violation of the Plaintiffs' rights under the Fifth and Fourteenth Amendments requiring the Defendants to pay the Plaintiffs just compensation.[1]

## PARTIES

5. Plaintiffs, David W. and Linda A. Cameron, are the owners of the property ("the Subject Property") located at 9 South Kashong Point, Penn Yan, New York, which is the subject of this action.

6. Defendant, Sean Mahar, is the current Interim Commissioner of the NYSDEC, with an office for the conduct of business located in Albany, New York. Upon information and belief, the Commissioner is directly involved in the enforcement activities of the NYSDEC, supervises its personnel involved in enforcement and is responsible for, and actively involved in, implementing the NYSDEC's interpretations of the Environmental Conservation Law.

7. Defendant, Steven Miller, is a Biologist 2, employed by the NYSDEC in its Region 8 and was the author of the Notice of Violation, dated May 29, 2024, sent to the Plaintiffs, directing them to remove the land bridge across the Pond placed entirely on the Subject Property. He has an office for the conduct of business in Avon, New York.

---

[1] Following the decision of the United States Supreme Court in *Knick v. Township of Scott, Pa,* 139 S. Ct. 2162, 204 L. Ed. 2d 558 (2019), a claimant seeking just compensation for the taking of his or her property is no longer required to exhaust available state procedures before seeking relief in Federal Court.

8. In enforcing the laws and policies in question, the Defendants are acting under color of state law and pursuant to official policy and custom. As such, they are subject to suit in Federal Court.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983 over Plaintiff's federal constitutional claims. This Court also has jurisdiction by virtue of 28 U.S.C. §§ 1343, 2201 and 2202.

10. Venue is proper because the Subject Property is located in Yates County, New York, the western shore of Seneca Lake is within the Western District of New York, and the violations of Plaintiffs' rights have occurred, or will occur, in this judicial district.

## BACKGROUND

**A. The Underlying Cause of the Problem.**

11. The Plaintiffs purchased the Subject Property from Raymond and Pearl Steinborn in 1978 (a copy of the survey map depicting the Subject Property as of 1978 is attached hereto as **Exhibit "1"**). Note that as of 1978, the Seneca Lake Shoreline is less than 100 feet from the east side of the Plaintiffs' deck.

12. The Subject Property lies to the south of Kashong Creek which empties out into Seneca Lake at what is known as Kashong Point. At the time the Plaintiffs first inspected the Subject Property, there was a significant amount of organic debris along the shoreline. Mr. Steinborn assured the Plaintiffs that it was an occasional event that was seasonal in nature and "no big deal."

13. The Plaintiffs soon learned that the debris was, in fact, a big deal. Sometime in the mid-70's, after Hurricane Agnes inundated Western New York and the Finger Lakes in 1972, the

U.S. Army Corps of Engineers (USACE), in collaboration with the New York State Department of Transportation (NYSDOT), armored one side of Kashong Creek in order to protect a Town of Geneva Pump Station, by using riprap to deflect the flow of water from the creek. Unfortunately, armoring only one side of a stream or river can have profound effects upon the downstream environment and, in this case, the work performed by USACE and the NYSDOT modified the flow path and current speed, thereby accelerating erosion along the unprotected creek bed. This eroded material was deposited as sediment upon reaching open water. Kashong Creek was redirected south at its outlet, transforming both the shoreline and the open water. Sediment was continuously directed towards the cove on which the Subject Property and that of the Plaintiffs' neighbors were located, causing this sediment, as well as eroded grasses and organic material, to be regularly deposited upon the Plaintiffs' shoreline and that of their neighbors.

14. Over the course of many years, various representatives of the NYSDEC, the USACE and Yates County have unofficially acknowledged that this single-shore armoring along Kashong Creek caused the ongoing deposition of sediment and debris along the shoreline south of the creek's outlet, but there has never been any official admission, much less any effort to remediate the problem. On the contrary, the NYSDOT and/or the Yates County Department of Transportation have excavated the creek, thereby widening and deepening the creek, which has only exacerbated the delivery of tons of eroded material to the lakeshore which the Plaintiffs and their neighbors must contend with.

15. Plaintiffs' struggle over the erosion of Kashong Creek and its impact on their property has been endless since 1978. Sedimentation has filled what was once a bay south of the Kashong Creek outlet and has turned it into a peninsula, making it difficult, if not impossible for

some residents to reach their waterfront. Some have docks which were once used to access the lake that are now completely landlocked.

16. In 1982, 2001 and 2008, frustrated residents pooled their resources, obtained permits from the USACE and dredged the bay at great expense. The deposition of sediment and debris continued unabated, however, and, after 2008, the neighbors surrendered to the onslaught which is not a natural or historical phenomenon, but one which was caused by governmental malpractice.

### B. The Plaintiffs Are Forced to Adapt.

17. Over the years since the Plaintiffs purchased the Subject Property, the configuration of their foreshore has changed dramatically. Aerial photographs show the increasing scope of the sediment deposition in front of the property belonging to the Plaintiffs and their neighbors (images from 2002, 2007, 2010, 3014, 2017 2020 and 2022 are attached hereto as **Exhibit "2"**). By mid-2023, the Pond was fully encapsulated by the accretion of land upon the western shore of Seneca Lake. This accretion continues to this day.

18. In 2004, Mr. Cameron's career caused the Plaintiffs to relocate to Nevada. What was expected to be a short stint turned into twelve years but, when he retired in 2016, the Plaintiffs returned to Seneca Lake. By then, the Kashong Creek "delta" had grown exponentially and the Plaintiffs' shoreline was now hundreds of feet from their home. Between their home and the shoreline, a large body of water had been created as the sediment extended in a southerly direction.

19. By the time the Plaintiffs returned to Seneca Lake, further dredging would have been futile given the large volume of material which had been deposited on the shoreline since 2008. Rather than repeatedly attempting to resist the inevitable, the Plaintiffs reluctantly decided to adapt to it.

20. Because their deeds and New York's real property laws generally extend ownership of waterfront lands to the high water mark, in Plaintiffs' case, that meant that the accretion of land to their parcel expanded its size and, in turn, extended its waterfront eastward. Accordingly, in 2016, Plaintiffs submitted the required applications to construct a new lakefront dock for swimming and boating. At that time, in order to construct a dock, the Plaintiffs were required to submit a "Joint Application Form" which was evidently directed to three New York State Agencies, the NYSDEC, the New York State Office of General Services (NYSOGS) and the New York State Department of State (NYSDOS), as well as one federal agency, the U.S. Army Corps of Engineers (USACE) (a copy of the completed form is attached hereto as **Exhibit "3"**). Upon information and belief, the agency primarily responsible for reviewing the application was the NYSOGS since it is the agency which handles the disposition of land owned by New York State and the submerged lands under the waters of the Finger Lakes are, generally, owned by the state.

21. Along with the lakefront dock, Plaintiffs modified their application to seek a permit to construct an elevated wooden walkway across the pond in order to reach their waterfront and the new dock. Otherwise, Plaintiffs would have been unable to cross the Pond without coming onto the properties of their neighbors to the north or south (a copy of the USACE's acknowledgement of the modification request is attached hereto as **Exhibit "4"**).

22. On April 13, 2018, the NYSOGS issued its Submerged Lands License for the Plaintiffs' project as modified (a copy of the License is attached hereto as **Exhibit "5"**). No other agency weighed in, made comments of imposed any conditions upon the Plaintiffs' use of their property.

23. While the walkway was acceptable when first constructed, it became apparent that there were safety issues associated with its use (an image of the wooden walkway is attached hereto

as **Exhibit "6"**). On one occasion, the child of Plaintiffs' friends fell off the walkway and into the pond below, getting stuck in the mud. Understandably, both the child and his parents were upset. Additionally, Plaintiff, Lynda Cameron, began experiencing some health issues. Among other problems, she suffered a stroke which affected her balance. Plaintiffs agreed it was too risky for her to traverse the relatively narrow, thirty-inch wide, raised walkway.

### C. The Land Bridge Was Constructed.

24. In 2023, one of the Plaintiffs' sons suggested that the raised walkway be replaced with a land bridge which would provide safer access to the lakefront and allow for lawn care of the grassy area east of the pond.[2]

25. At the time, Plaintiffs had access to a front-loader and were doing some minor clean up of the Subject Property. With the necessary equipment at Plaintiffs' disposal and the fill needed to construct the land bridge readily available, Mr. Cameron and his sons went ahead and replaced the wooden bridge (for which Plaintiffs had a license from the NYSOGS) with a land bridge, thereby making access to the waterfront much safer for Plaintiffs' family and guests (an image of the land bridge is attached hereto as **Exhibit "7"**). This work was done on August 1, 2023.

26. On August 10, 2023, a NYSDEC Law Enforcement Officer arrived at the Subject Property unannounced after having received a complaint about the Plaintiff's construction of the land bridge. He took photographs and left the scene.

27. On August 14, 2023, at Mr. Cameron's request, a representative of the Yates County Soil & Water Conservation District came to the Subject Property to determine the mean

---

[2] This was after (1) the Supreme Court had significantly narrowed the definition of "the waters of the United States" in its *Sackett* decision, and (2) the Pond had become completely enclosed by the accretion of land and closed off from Seneca Lake.

high water mark (MHW) and set stakes which reconfirmed their study done in 2017.  The MHW was exactly where it had been set in 2017 when the Plaintiffs' permit application was in process.

28.  On August 16, 2023, Dr. Elena Burns and Defendant, Dr. Steven Miller, both representatives of the NYSDEC, arrived to inspect the site.  Mr. Cameron escorted them during their entire visit.  They asserted that the NYSDEC, not Yates County, established the methods in New York for fixing the MHW mark.  Nevertheless, these NYSDEC representatives observed that the Yates County personnel had done a good job of marking the MHW even though the methods employed by the two agencies differed.

29.  These NYSDEC representatives spent approximately one and one-half hours at the Subject Property.  *At the conclusion of their inspection, Dr. Miller advised Mr. Cameron that he found no violation of the Environmental Conservation Law.*  Defendant Miller said that, while he would have preferred the wooden dock, he was "OK" with the earthen bridge.  He advised Mr. Cameron that he would have to alert the USACE about the installation of the replacement bridge.

30.  On August 21, 2023, the Plaintiffs received a registered letter from a Harold Keppner of the USACE.  Mr. Keppner stated in his letter that that work on the bridge should stop immediately (it was already completed by that time). Importantly, Mr. Keppner advised the Plaintiffs:

> Under Section 10 of the Rivers and Harbors Act of 1899, and Section 404 of the Clean Waters Act, the U.S. Army Corps of Engineers has regulatory authority over construction, excavation, or deposition of materials in, over, or under navigable waters of the United States.  Under Section 404 of the Clean Water Act, the U.S. Army Corps of Engineers regulated the discharge of dredged or fill material into the waters of the United States, including freshwater wetlands.

With this statement, Mr. Keppner made clear that Seneca Lake and associated freshwater wetlands were "navigable waters of the United States" and that they were under the regulatory authority of the USACE.  He suggested to the Plaintiffs that they contact Mr. Aaron Smith at USACE for

advice (a copy of Mr. Keppner's letter is attached hereto as **Exhibit "8"**).

31. Mr. Cameron telephoned Mr. Smith that same day. Mr. Smith asked Mr. Cameron why he (Mr. Cameron) did not seek a permit from the USACE for the land bridge and Mr. Cameron told Mr. Smith that he did not think it was necessary as the bridge was entirely on his property and was behind the MHW stakes which had been set by either the Yates County Soil and Water Conservation District or the NYSDEC. Mr. Smith asked Mr. Cameron to submit a drawing of the site with dimensions and photos.

32. On August 25, 2023, Mr. Cameron e-mailed Mr. Smith at the USACE in August of 2023 to supply the items which he had requested (a copy of this e-mail is attached hereto as **Exhibit "9"**). Mr. Smith acknowledged receipt on August 25, 2023, advising that he would review the materials Mr. Cameron sent.

### THE NYSOGS AND NYSDEC ASSERT THEIR PURPORTED AUTHORITY

33. *Mr. Cameron heard nothing further from the USACE.* However, on August 25, 2023, he received a phone call from a representative of the NYSOGS (Mr. Cameron neglected to write down the name). This NYSOGS representative claimed that "the project" was on New York State property and had to be removed. Mr. Cameron challenged this assertion and pointed out to the caller that the Plaintiffs' property extended to the MHW line but the caller still insisted that the bridge was on New York State property. When Mr. Cameron refused to concede that the bridge was on state property, the caller said: "[w]e have plenty of lawyers sitting around here just looking for things to do." The call was not cordial.

34. On August 28, 2023, Mr. Cameron received a phone call from Dr. Burns of the NYSDEC. She advised Mr. Cameron that she would be returning to the Subject Property to revise the MHW stakes which had been placed earlier in the month. She was apologetic and told Mr.

Cameron that this exercise was being directed "from above." She advised Mr. Cameron that the MHW mark was to be repositioned some 250 feet from the lake shore to the western shore of the Pond. Dr. Burns told Mr. Cameron that she wanted to visit the site on August 31, 2023 to accomplish her assignment.

35. Later that same day, Mr. Cameron sent Dr. Burns an e-mail expressing his dismay at this complete reversal of their previous determination of the MHW mark, their opinion that there were no violations of the Environmental Conservation Law and their determination that the land bridge was legal and could remain. Within exactly ten minutes of the sending of his e-mail, Mr. Cameron received a phone call from Defendant Miller who, in a conciliatory tone, told Mr. Cameron that he (Dr. Miller) simply wanted to examine an area to the north of the Pond near the Kashong Creek. Mr. Cameron said that, given the NYSDEC's about-face, he would have to consult counsel before consenting to any further inspections. The site visit requested by Dr. Burns on August 31, 2023, never materialized.

36. However, Defendant Miller did visit the site months later on March 29, 2024, and again on April 9, 2024, both unannounced and without Plaintiffs' consent. His presence at the Subject Property was noted the Plaintiffs' neighbor (and Town Supervisor for the Town of Benton) who, initially, suspected there was a trespasser afoot until he saw the NYSDEC vehicle. Evidently, it was during these two site visits that Defendant Miller found the alleged hydrogeological connection he now relies upon to claim that the Pond is under the NYSDEC's regulatory control and that the Plaintiffs have violated Section 15-0505 of the Environmental Conservation Law.

37. By letter dated May 29, 2024, Defendant Miller issued his notice of violation (a copy of this Notice of Violation is attached hereto as **Exhibit "10"**). While § 15-0505 prohibits fill from being placed "in any of the…wetlands that are adjacent to and contiguous at any point to

any of the navigable waters of the state and that are inundated at mean high water level or tide" without a permit, Dr. Miller's notice of violation indicates only that he "used aerial imagery of your property and the Kashong Point community. *This image the pond area was inundated and contagious with Seneca Lake at some point in time*."  The aerial image to which Defendant Miller refers was not enclosed with the Notice and its origin, date, and scale are unknown.

38. To the extent that Defendant Miller concluded that there was a legally sufficient hydrogeological connection between the Pond and either Seneca Lake or Kashong Creek, he was, and is, mistaken.  In fact, the Pond is completely surrounded by land and, at its closest, open water is more than a hundred feet away from the Pond (copies of various images showing the vast expanse between the Pond and Seneca Lake, and between the Pond and Kashong Creek, are attached hereto as **Exhibit "11"**).  To the extent there is any subterranean connection, or even a sporadic surface connection, under no reasonable interpretation of the topography at the Subject Property can it be said that there is "a continuous surface connection to bodies that are waters of the United States in their own right, so that they are indistinguishable from those waters." The Notice of Violation is based upon a fiction which cannot, and should not, support the unfair, unduly harsh and, in the end, unconstitutional interference with the Plaintiffs' protected property rights.

## FIRST CLAIM FOR RELIEF

**Injunctive and Declaratory Relief for Violation of the Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution**
**(42 U.S.C. §1983)**

39. Plaintiffs repeat and re-allege paragraphs "1" through "38" as if more fully set forth herein.

40. Seneca Lake is connected to Cayuga Lake by the Seneca River which is, itself, a navigable water of the United States (a copy of two maps published by the NYSDEC, showing

how Cayuga Lake connects by navigable water to Lake Ontario and beyond is attached hereto as **Exhibit "12"**). As noted above (¶ 30), the USACE exercises jurisdiction over the navigable waters of the United States and over the navigable waters of Seneca Lake. Thus, the waters of Seneca Lake are navigable waters of the United States and subject to the Clean Water Act (CWA) 33 U.S.C. §§ 1251 *et seq.*

41. Under the most recent applications and interpretations of the CWA by the United States Supreme Court, regulatory authority can only be exercised over freshwater wetlands located entirely upon private property with a legally and factually sufficient connection to the navigable waters of the United States.

42. As noted above (¶ 3), the CWA extends to only those wetlands with "a continuous surface connection" to bodies that are waters of the United States in their own right, so that they are "indistinguishable" from those waters.

43. The Pond over which the land bridge placed by the Plaintiffs has no continuous surface connection to Seneca Lake or Kashong Creek, despite the Defendants' attempt to identify some, vague, undefined, sporadic, hydrogeological connection between the Pond and those waters.

44. The Pond is neither *adjacent* or *contiguous* to, nor *indistinguishable* from, Seneca Lake and Kashong Creek, as those terms have been defined by the United States Supreme Court.

45. For these reasons, the actions of the Defendants in forcing the Plaintiffs to remove the land bridge placed entirely on their property are unauthorized by the CWA, *ultra vires*, unfair, illegal and unconstitutional; they will cause a physical invasion of the Plaintiffs' property and a taking for which the Plaintiffs are entitled to just compensation.

46. In their efforts to force the Plaintiffs to remove the land bridge across the Pond, the Defendants, have acted, or will be acting, under the color of state law, to wit, Section 15-0505 of

the Environmental Conservation Law., and, in turn, pursuant to an official policy, custom or practice of the NYSDEC.

47. As a result of this violation, the Defendants have caused, or will cause, Plaintiff's injuries and irreparable harm.

48. As a result of the foregoing, a bona fide and actual controversy exists between the Plaintiffs and the Defendants regarding the legality and constitutionality of their attempts to force the Plaintiffs to remove the land bridge located entirely on their property and not within the navigable waters of the United States.

49. A judicial determination of the Defendants' actions is necessary to avoid the violation of the Plaintiffs' constitutional rights protected by the Fifth and Fourteenth Amendments to the United States Constitution.

50. As a result of the foregoing, Plaintiffs are entitled to a judgment declaring that the actions of the Defendants are *ultra vires*, unfair, illegal and unconstitutional.

51. Due to the threatened violation of their rights under the Fifth and Fourteenth Amendments to the United States Constitution, Plaintiffs seeks injunctive and declaratory relief against further actions by the Defendants to engineer this taking.

52. In addition, the Plaintiffs are entitled to their reasonable attorneys' fees as authorized by 42 U.S.C § 1983.

## SECOND CLAIM FOR RELIEF

### Injunctive and Declaratory Relief for Violation of the Due Process Clauses of the Fifth and Fourteenth Amendments
### 42 U.S.C. § 1983

53. Plaintiffs repeat and re-allege paragraphs "1" through "52" as if more fully set forth herein.

54. The method employed by the Defendants to determine whether the Pond (and similar wetlands) are adjacent to or contiguous to regulated waters is vague, hopelessly indeterminate, incapable of application through a fair and reasonable application of the law and fails to provide fair and reasonable notice of the conduct which violates Section 15-0505 of the Environmental Conservation Law.

55. As a result of the foregoing, the actions of the Defendants to force the Plaintiffs to remove the land bridge placed entirely on their property are unauthorized by the CWA, *ultra vires*, unfair, illegal and unconstitutional and represent a taking for which the Plaintiffs are entitled to just compensation.

56. In addition, the Plaintiffs are entitled to their reasonable attorneys' fees as authorized by 42 U.S.C § 1983.

### THIRD CLAIM FOR RELIEF

**Just Compensation for Violation of the Takings Clause of the Fifth and Fourteenth Amendments to the United States Constitution**
**(42 U.S.C. §1983)**

57. Plaintiffs repeat and re-allege paragraphs "1" through "56" as if more fully set forth herein.

58. It the Defendants are allowed to compel, or otherwise effectuate, the removal of the land bridge across the Pond, their actions will constitute a physical invasion of the Plaintiffs' property and a taking for which the Plaintiffs are entitled to just compensation as determined by the trier of fact.

59. In addition, the Plaintiffs are entitled to their reasonable attorneys' fees as authorized by 42 U.S.C § 1983.

## JURY DEMAND

60. Plaintiffs demand a trial by jury as to all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in its favor and grant the following relief against the Defendants:

A. Granting a preliminary and permanent injunction, prohibiting, restraining and enjoining, the Defendants and all others acting on their behalf or in their stead, from removing, or forcing the Plaintiffs to remove, the land bridge across the Pond entirely located on their property or otherwise interfering with Plaintiffs' right to access their shoreline;

B. Declaring that the actions of the Defendants in seeking to compel the Plaintiffs to remove the land bridge across the Pond are *ultra vires*, unfair, illegal and unconstitutional.

C. In the event the Defendants are allowed to compel, or otherwise effectuate, the removal of the land bridge across the Pond, an award of just compensation for the taking of Plaintiffs' property;

D. A further declaration of the respective rights and responsibilities of the parties;

E. Reasonable Attorneys' fees as allowed by law;

F. Such other and further relief as this Court deems just and proper.

**DATED:** October 22, 2024
Rochester, New York

**WOODS OVIATT GILMAN LLP**

By: _____
Donald W. O'Brien, Jr., Esq.
*Attorneys for Plaintiffs*
1900 Bausch & Lomb Place
Rochester, New York 14604
585.987.2810
dobrien@woodsoviatt.com